## Appeal of MARY P. ENO STEFFANSON.        Docket No. 7.

An individual who places her property in trust under an agreement by which she may have paid over to her a portion of the principal upon written request therefor and is to receive the income of the fund for life in excess of an annuity payable to her mother is not entitled to deduct from gross income in her individual income-tax return a loss of a portion of the principal realized by the trustee upon the sale of a part of the assets of the fund.

Submitted November 21, 1924; decided April 8, 1925.

*John A. Kratz, Esq.*, for the taxpayer.
*A. Calder Mackay, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This is an appeal from the determination by the Commissioner of a deficiency in income tax for the year 1919 in the amount of $2,967.27. From the evidence of record the Board makes the following

## FINDINGS OF FACT.

1. On or about April 9, 1904, the taxpayer executed a certain deed of trust to the United States Trust Company of New York by the terms of which she transferred certain property and interests in property from the estate of her grandfather of a value in excess of $500,000. She made herself the sole beneficiary under this instrument with the exception of an annuity of $3,000 payable to her mother. The property consisted entirely of personalty. The deed of trust provided in part:

II. To hold, manage, invest and reinvest said fund and keep the same invested in the manner provided in Article THIRD hereof and to recover and receive the income and revenue thereof, and to pay over the net income thereof, during the natural life of said party of the first part, after deduction of all proper expenses and charges, including the commissions of said party of the second part as follows:

Three thousand dollars ($3,000) thereof annually to Harriet C. Eno, mother of the party of the first part, and the remainder thereof unto the said party of the first part, in quarterly installments as near as may be, for and during the period of the natural life of said party of the first part, upon her sole and separate receipt. If said Harriet C. Eno shall die during the life of said party of the first part, then from and after her death the entire net income of said fund shall be paid to said party of the first part during her natural life, and upon her sole and separate receipt.

III. To pay over to said party of the first part such portions of the said principal of said fund, as and when she may from time to time in writing request, after the expiration of five years from the date hereof, or after the marriage of said party of the first part, if she should marry within said period of five years, provided that such payments of principal shall not in any event or at any time exceed in the aggregate the sum of Three hundred thousand dollars ($300,000).

And said party of the second part shall at any time, upon the request in writing of said party of the first part, purchase and maintain out of the principal of said fund any residence selected by the party of the first part for her use and occupation, or shall purchase any real estate selected by the party of the first part for the erection of a residence for her, and shall out of the principal of said trust fund pay and defray all expenses of the erection, decoration and furnishing of a residence thereon for said party of the first part as she may desire and direct, and shall permit said party of the first part to occupy and use the same without the payment of any rent or other charge therefor, all charges and costs of maintaining the same, including taxes, assessments, water rents, repairs and improvements to be paid out of the income of the balance of said trust fund, and shall, upon like written request, sell or otherwise dispose of such property and purchase other property in place thereof as the party of the first part may select, to the end that said party of the first part may always have provided and maintained a suitable and satisfactory residence out of said fund. The payments so made for the purchase or erection, decoration and furnishing of such residence shall not form a part of the sum which the said party of the first part is entitled to withdraw from the principal of said trust fund, as hereinbefore provided.

IV. Upon the death of the said party of the first part to pay over and distribute the principal of said trust fund, or the balance thereof then in the hands of said party of the second part, as the case may be, to the persons and in the manner, shares and proportions, which the party of the first part shall by her last will and testament direct and appoint.

  *   *   *   *   *   *   *

SECOND:—The party of the first part hereby reserves for herself and for every other beneficiary of any trust hereunder, being, at the time of full age, the right to substitute by instrument under her or his hand and seal any other corporation capable by law of executing any trust hereby created for the benefit of the person making such substitution, in place of said party of the second part, and upon the execution by said party of the first part, or by any such beneficiary, of any such new appointment and notice thereof to the party of the second part, said party of the second part shall immediately account for

and pay over and transfer to such new trustee all property of said trust then in its possession or under its control.

THIRD:—All funds received by the said trustee hereunder shall be invested by it in bonds secured by first mortgage or mortgages on improved real estate situated in the State of New York, or in bonds of the State of New York, or of any of the cities or counties thereof, or bonds of the Government of the United States of America, or in first mortgage bonds on railroads within the United States upon which the interest has been regularly and duly paid for a period of five years next preceding such investment. The party of the first part, however, shall have the power, in case any investment made by the party of the second part is not satisfactory to her, to direct the party of the second part in writing to change such investment; and such investment shall, as soon as practicable, be sold or otherwise converted into money, and the proceeds invested by the party of the second part in other securities of the character hereinbefore specified, which shall be subject to the same power in the party of the first part.   *   *   *

2. In the year 1906 the taxpayer requested the trustee to purchase for her the premises numbered 17 West 37th Street, in the Borough of Manhattan, New York, N. Y., and during the same year the said premises were so purchased as a residence for the taxpayer, title being taken in the name of the trustee. The consideration therefor was $88,000. The taxpayer instructed her trustee to make such alterations and repairs as were necessary to place the premises in suitable condition for her residence. But before the alterations were completed, the taxpayer abandoned her intention of occupying the premises as a residence and the same were rented and continued to be rented until the sale thereof.

3. After the taxpayer had determined not to occupy said premises, and in the year following the date of the purchase, she requested her trustee to purchase for her for a residence premises numbered 56 East 57th Street, in the Borough of Manhattan, New York, N. Y. These premises were immediately purchased and they have been occupied by the taxpayer continuously since that date.

4. The fair market value of the premises numbered 17 West 37th Street at March 1, 1913, was $95,000.

5. In 1919 the trustee, at the instance of the taxpayer, sold the premises on 37th Street for $53,593.90, realizing a loss upon the sale of $41,406.10.

6. In her income-tax return for 1919, the taxpayer reported in Schedule " C ":

Profit on bonds_____ $1,086.25
Loss on sale #17 West 37th St_____ 41,406.10

Net loss this Schedule_____ 40,319.85

Included in the gross income are—

Rent of premises numbered 17 West 37th Street_____ $1,900.00
Interest on corporation bonds containing tax-free covenant clause_____ 5,153.33
Interest on bonds not containing tax-free covenant clause _____ 1,263.70
Interest on bank deposits_____ 20,865.51
Amount paid by debtor corporation on tax-free bonds__ 103.07
Dividends received through fiduciary_____ 2,330.00

From the total gross income was deducted the net loss of $40,319.85 above mentioned and other deductions to which the taxpayer was legally entitled. The net loss shown by the return was $16,107.50.

After an examination of the taxpayer's records, the deduction of $40,319.85, above mentioned, was disallowed.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

SMITH: The taxpayer derives practically all of her income from a trust. During the year 1919 the trustee sold certain assets at a profit of $1,086.25 and sold certain other assets, consisting of premises numbered 17 West 37th Street, New York, N. Y., at a loss of $41,406.10. The net loss from the sale of capital assets was $40,319.85. The entire income or revenue of the trust fund for 1919, exclusive of $3,000 payable to the taxpayer's mother, was paid to the taxpayer during the year 1919. The taxpayer claims a deduction from the gross income received by her of the above-mentioned net loss of $40,319.85 sustained by the corpus of the trust fund. Is this a legal deduction from the gross income of the taxpayer?

On behalf of the taxpayer it is argued that by the terms of the deed of trust the taxpayer reserved the right to direct the Trust Company to change the investment of the funds. This, however, was a very limited right since the taxpayer only had the right to require the trustee to sell certain obligations and purchase certain other obligations of a given class. It is also argued that the taxpayer retained the right to substitute a new trustee; that she retained the right to withdraw $300,000 of the principal of the fund after 1909; that she retained the right to have the trustee purchase *any* residence selected by her for her use and occupation, the company to pay all expense of maintenance out of any income in its possession; that if the taxpayer cannot get the benefit of a deduction in the case of a capital loss, neither can the trustee, for the trustee has no undistributable income nor capital gains against which such capital loss could be offset.

What was the nature of the estate or interest which the taxpayer had in the trust fund voluntarily created by her in 1906? Manifestly, she had only a life interest in a part of the trust fund. It is true that she had the right to withdraw a portion of the corpus of the fund but she retained no right whatever to withdraw the entire fund and so far as the year 1919 is concerned, which is the only year before us, no such withdrawal was made. For the entire year the taxpayer merely had a life interest in the trust fund.

The question whether a beneficiary with a life interest may deduct from gross income any part of a capital loss sustained by a trustee, under the provisions of the Revenue Act of 1918, was before the court in the case of *Baltzell* v. *Mitchell*, 1 Fed. (2d) 29. The decision of the lower court was affirmed by the United States Court of Appeals for the First Circuit on January 14, 1925, 3 Fed. (2d) 428. It was there held that under section 219 of the Revenue Act of 1918 capital losses of a trust estate are deductible only by the trust, and the beneficiaries with life interests must report for taxation the income received by them from the proceeds without deduction of losses suffered by the corpus of the trust estate.